FARMERS AND MERCHANTS BANK, OF BLOOMING GROVE,
V. SLAYDEN & CLARKSON.

No. 444.

**Banks—Deposits—Custom—Charge—Evidence.**—Appellees, as cotton buyers, purchased from Brown & Co. a quantity of cotton, which they shipped and sold to foreign customers. Before closing the purchase, appellees made arrangements with appellant whereby they drew drafts on their foreign customers for the amount of the price for which they had sold the cotton to such foreign customers, with bills of lading attached, and such drafts were deposited with appellant for collection, for account of appellees, less an agreed exchange. When Brown & Co. bought the cotton, they procured the money therefor from appellant, and appellant held the warehouse receipts as its security. When appellees bought the cotton from Brown & Co., the purchase was known and assented to by appellant, though appellees had no notice that the bank claimed a lien on the cotton. Brown & Co. paid to the bank the money received from

appellees, and the difference between this and the net amount of the drafts drawn by appellees on their foreign customers upon the shipment of the cotton was $803.63, which amount appellant refused to pay to appellees, but claimed it by virtue of the indebtedness of Brown & Co. to it and its lien on the cotton. In a suit by appellees against appellant for that amount and interest, *Held:·*

1. As the fact that appellees drew their drafts and caused them to be placed with appellant was not controverted by either party, it was not error for the court in its charge to state that such fact was admitted; the question as to whose credit same were placed with appellant having been submitted to the jury.

2. The presumption would be, that when appellees placed, or caused to be placed, the drafts in the bank, in accordance with the previous understanding, they were deposited to their own credit. If appellant claimed otherwise, it assumed the burden of proving it.

3. It was not error, under the facts, for the court to instruct the jury to disregard the lien of the appellant, since it appeared without controversy that appellees had no notice thereof, and had bought the cotton with full knowledge and acquiescence of appellant.

4. The declarations of the agent of Brown & Co., with whom appellees had intrusted their drafts upon their foreign customers for deposit with appellant, being immaterial, it was not error to exclude them. Had they been in derogation of appellees' rights, they would not be binding upon appellees, as appellant knew who was entitled to credit with the drafts.

5. Under the facts, the general custom of banks to give their customers credit for such exchange so deposited was not only admissible as evidence, but conclusive against the right of appellant to claim the profits of appellees in their sale.

APPEAL from Navarro. Tried below before Hon. RUFUS HARDY.

*McLellan & Prince* and *Barry & Etheridge*, for appellant.—1. Appellees having intrusted Cherry, Brown & Co.'s agent, to deliver to appellant the drafts in question, were bound by the statements made by Cherry to appellant at the time of and in connection with such delivery, and such statements were admissible: (1) because res gestæ of the delivery; (2) because they were declarations made at the time of and within the scope of his agency, and with reference to the subject matter thereof; and (3) because explanatory of Cherry's possession of said drafts.

2. Appellant held the cotton purchased by appellees from Brown & Co. as collateral to secure the indebtedness of Brown & Co. to it. Brown & Co. were insolvent, and their indebtedness to appellant exceeded the value of the cotton. Such being the facts, appellant, by virtue of its lien upon the cotton, had the legal right to hold the same until they received the full market value thereof, or until the account of Brown & Co. should be paid.

*McKie & Autry*, for appellees.—If Cherry was the agent of Slayden & Clarkson for any purpose, it was simply for the delivery of the two drafts he was the bearer of; the proper application of the funds appellees had already arranged for. Brothers v. Mundel, 60 Texas, 240; 3 Ct. App. C. C., sec. 334; 1 Jones on Liens, secs. 63, 64.

Where there is no controversy about the fact proven, we do not understand that it is improper for the court in its charge to assume that the fact is proven. Teal v. Terrell, 58 Texas, 261; 18 Texas, 871; 20 Texas, 294.

This testimony was proper, because appellants were shown to be in the banking business, and there being no express contract between Slayden & Clarkson and appellant that the drafts drawn by them should go to their credit, what was the usual custom among banks under this state of facts became important and relevant in order to show the bank's duty to its customers. Wooters v. Kauffman & Runge, 73 Texas, 397, 398; 67 Texas, 492; Meaher v. Lufkin, 21 Texas, 382, 383.

LIGHTFOOT, CHIEF JUSTICE.—We adopt appellant's statement of the issues, as follows:

Appellees sued appellant to recover $803.63, alleging that they were purchasing cotton in the locality of appellant bank, and that to enable them to do so an arrangement was had between appellees and appellant whereby appellees were to draw their drafts upon their foreign correspondents with bills of lading attached. That the drafts so drawn (less exchange) were to be placed by appellant as deposits to the credit of appellees, and that in payment of the cotton appellees should draw their local checks against such deposits in appellant bank. That in pursuance of such an arrangement, appellees drew and deposited with appellant bank for their credit their drafts, aggregating (less exchange) the sum of $17,013.22, and that they drew their local checks for the sum of only $16,208.58, leaving a balance of $803.63 due them. In addition to the general issue, appellant alleged that appellees bought cotton of Brown & Co. That Brown & Co. owed appellant a large account and were insolvent, and that it held said cotton and the warehouse receipts therefor as collateral. That as it had a lien on said cotton for more than its value, it had a right to hold said cotton until either its full value was paid to it or the account of Brown & Co. should be settled. That the drafts drawn by appellees represented the price paid by them to Brown & Co. for the cotton, and that such drafts were not deposited by appellees for their credit, but that they gave such drafts to Brown & Co., who deposited the same with appellant to their credit. That appellant, as it had a right to do, credited the account of Brown & Co. therewith, and that after so doing, Brown & Co., who were insolvent, owed appellant a balance. Upon these issues a trial by jury resulted in a verdict and judgment for appellees, from which this appeal was taken.

From the verdict and judgment, and the testimony, we find the following conclusions:

1. In the latter part of November, 1891, appellees, as cotton buyers, purchased from J. H. Brown & Co. 486 bales of cotton, which they shipped and sold to foreign customers. Before closing the trade,

they made arrangements with the appellant bank whereby they drew drafts upon their foreign customers for the amount of the price for which the appellees had sold the cotton to such foreign customers, with bills of lading attached, and such drafts were deposited with said bank for collection, for the account of appellees, the amount of exchange to be paid by appellees to said bank therefor being fully agreed upon between them.

2. That at the time said Brown & Co. bought said cotton they procured from said bank the money with which to pay for it, and said bank held the warehouse receipts for said cotton as their security.

3. That at the time said Brown & Co. sold said cotton to appellees, they did so with the knowledge and consent of the said bank's officers, and all parties concerned knew of such sale to appellees, as well as the sale they had made of the cotton to their foreign customers, and the profits they were to make in the transaction, and neither said bank nor J. H. Brown & Co. gave any notice whatever to appellee that said bank claimed a lien on the cotton, and appellees had no notice of that fact.

4. That said J. H. Brown & Co. were insolvent at the time of the sale, and turned over and paid to the bank every dollar that they obtained as the purchase price for said cotton from appellees, and the difference between the price at which appellees sold the cotton and for which they deposited drafts with appellant bank (less exchange), and the price they paid Brown & Co., and to which they were entitled to a credit in said bank, was $803.63, for which, with interest, they were entitled to judgment against said bank. Some additional facts will be set out in detail below.

*Opinion.*—1. Appellant's first assignment is as follows: "The court erred in its general charge to the jury in the following statement therein, to wit, 'It being admitted that the plaintiffs drew the checks mentioned and caused them to be placed with defendant;' the same being a charge upon the weight of evidence, the defendant contending that while plaintiffs drew the drafts, they did not deposit them with defendant for their credit, but the same were deposited by J. H. Brown & Co."

The charge of the court is not open to the criticism contained in the assignment. There was no question made on the trial that plaintiffs drew the checks mentioned and caused them to be placed with defendant bank, and the court so stated in its charge, because this fact was one which was not controverted by either party; but the court clearly submitted for the determination of the jury the question whether such checks or drafts were placed there *to the credit* of J. H. Brown & Co. or appellees.

2. The second and fifth assignments were submitted together by appellant, and relate to the burden of proof. The testimony clearly shows that the drafts were drawn by appellees, Slayden & Clarkson,

upon their customers for the price at which they sold the cotton, and such drafts were caused to be placed by appellees in the bank, under a perfect understanding as to what exchange the bank should get, and the officers of the bank who transacted the business knew and spoke of the amount of profit which appellees were making out of the trade. Under such circumstances, the presumption would be, that when they placed or caused to be placed, the drafts in the bank, in accordance with the previous understanding, they were deposited to their own credit. If appellant claimed otherwise, it assumed the burden of showing it in accordance with the defense set up by its pleadings. The court did not err in its charge in this respect.

3. The fourth assignment complains that the court in its special charge held that the lien which appellant claimed to have on the cotton was immaterial in this case. While appellant held a lien on the cotton as between itself and J. H. Brown & Co. to secure the money the bank paid out in its purchase, yet the same was not a recorded lien. It was shown by testimony which was not controverted, that appellees had no notice whatever of any such lien, but in addition to this, the bank not only knew of the sale of the cotton by J. H. Brown & Co. to appellees, but encouraged it, and obtained the full benefit of it, having received every dollar of the purchase price paid by appellees to J. H. Brown & Co. It being shown without controversy that appellees had no notice of the equitable lien claimed by the bank, it was not error for the court to instruct the jury to disregard such lien in the trial of the cause. Brothers v. Mundell, 60 Texas, 240; 1 Jones on Liens, secs. 63, 64.

4. Appellant's sixth assignment complains that the court refused to permit the witness S. W. Grimes, president of appellant bank, to testify that Cherry, agent of Brown & Co., passed witness while he was in front of the bank and said to witness: "I have exchange for you for 200 bales of that cotton, and I will have you other exchange in a few days. It may come by mail." To which witness answered, "All right, Cherry."

We can not see any error in the exclusion of this testimony. It was shown that appellees had bought the cotton with the full knowledge and acquiescence of the bank, and that arrangements had been made by appellees with the cashier to take their drafts on their foreign correspondents at one and one-half exchange, and that Mr. Cherry, who was the agent of Brown & Co., was going out to Blooming Grove, and appellees sent one of the drafts by him to the bank. The remark of Cherry to Grimes was not inconsistent with the fact that the draft was for the credit of appellees, and there was no evidence tending to show that the drafts were intended by the witness to be deposited otherwise than as sent. It was well known by the bank, as well as by Cherry, that the former was getting the benefit of the purchase by appellees from Brown & Co., and the declarations of Cherry, even if they had been in derogation of appellees' rights, would not be binding upon

them, as he was the agent of Brown & Co., and had merely been intrusted with the drafts for delivery to the bank, and its officers knew who was entitled to credit with it. Cherry testified as follows: "I delivered the two drafts drawn by plaintiffs (appellees) against the cotton to the defendant bank. The drafts were sent by Brock (appellees' agent) through me to the bank. They were for 200 bales of cotton. I gave the drafts to the young man Loyd, employed in the bank, and told him to give them to Mr. Young when he came. I was present, and heard Young tell Brock what he would take his drafts at. I heard Young say to Brock that he did not know what to do with the drafts that had been sent out to the bank, and he had put the same to the credit of Brown & Co. Brock told him this would never do; and Young said he would change it." It was fully shown that appellees paid Brown & Co. for the cotton in local checks, every dollar of the purchase price. How the bank credited these local checks and the drafts on appellees' foreign customers both, its officers have failed to explain satisfactorily.

5. The seventh and eighth assignments of error attack the ruling of the court in admitting the testimony of witnesses Hawkins and Brock regarding the general custom of banks in cases such as set up by plaintiffs, to pass the exchange drawn by shippers of cotton to their credit and allow them to pay for the cotton by their local checks. The testimony had fully shown the purchase of the cotton by appellees, with the bank's knowledge and consent, and an arrangement between the bank and appellees whereby the former would take the exchange of the latter on their foreign customers at an agreed price for the exchange; that the officers of the bank knew that appellees had sold the cotton, and the price at which it was sold, and the exact amount of profit realized by appellees. Under such facts, the general custom of banks to give their customers credit by such exchange so deposited was not only admissible as evidence, but conclusive against right of the bank to claim the profits of appellees in their sale. See Wooters v. Kaufman, 73 Texas, 397, and authorities there cited.

We find no error in the judgment; but believing that justice has been reached in the case, it is affirmed.

*Affirmed.*

Delivered June 20, 1894.

Motion for rehearing overruled, September 19, 1894.